**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0335n.06**
**Filed: April 29, 2005**

**No. 03-4321**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TEHIRZA DIZDARIC; ANTONIO ARMAS; DIEGO ANTONIO ARMAS DIZDARIC; AARON ARMAS DIZDARIC; KEVIN LEANDRO ARMAS DIZDARIC, | ) ) ) ) ) | |
| Petitioners, | ) ) ) | ON PETITION FOR REVIEW FROM A FINAL ORDER OF THE BOARD OF IMMIGRATION APPEALS |
| v. | ) ) | |
| ALBERTO GONZALES, Attorney General, | | |
| Respondent. | | |

Before: MARTIN, COOK, and LAY[*], Circuit Judges.

COOK, Circuit Judge. Petitioners—Tehirza Dizdaric, Antonio Armas, and their three children—seek review of a final order of removal. For the following reasons, we deny their petition for review.

I

Dizdaric is a Muslim and native and citizen of Bosnia. Armas is a Catholic and native and citizen of Peru, where he once served in an anti-terrorist police force. Dizdaric left Bosnia at the

_____

[*]The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

outbreak of the recent war there, and went to Germany, where she lived for nine years and met

Armas. While living in Germany, the two entered into a common-law marriage and had three

children.

The family's attempts to gain legal status in Germany failed, and they came to the United

States. Because they entered without valid travel documents, the INS began removal proceedings

against them. Before an Immigration Judge, they conceded their removability, but sought asylum,

withholding of removal, and protection under the Convention Against Torture. The IJ found them

ineligible for such relief and ordered Dizdaric deported to Bosnia or Germany and the rest of the

family deported to Peru or Germany. The BIA affirmed without opinion.

Petitioners now challenge the IJ's findings that they suffered no past persecution, had no

well-founded fear of future persecution, and had "firmly resettled" in Germany before entering the

United States. They also argue the BIA improperly affirmed the IJ without opinion. For the reasons

that follow, their arguments fail.

II

We note initially that the BIA did not err in affirming the IJ without opinion. *See Denko v.

INS*, 351 F.3d 717, 731-32 (6th Cir. 2003) (BIA summary affirmance appropriate in the absence of

novel facts or substantial factual or legal issues). Because the BIA affirmed the IJ without opinion,

we review the IJ's decision directly. *Id.* at 730. We must uphold the IJ's factual findings unless

"any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## A. Past Persecution

Dizdaric claims the IJ erred in finding she had not suffered past persecution in Bosnia. The record, however, supports the IJ's conclusion. Dizdaric testified that when Bosnia's war began, she became frightened by "everything," mostly "the Serbs, . . . the tanks, [and] what would have happened to [her] as a young lady if [she] had been caught by the Serbian soldiers." Such general fears, however, are insufficient to establish past persecution. *See Bevc v. INS*, 47 F.3d 907, 910 (7th Cir. 1995) (having been a non-Serbian at a time when "ethnic cleansing" was occurring in Serbia insufficient to establish past persecution, absent a basis for fearing petitioner would be singled out). She belonged to no organizations, was never jailed, and was never beaten except, she claims, by her family. She thus fails to establish past persecution.

Armas claims he suffered past persecution in Peru, but the IJ reasonably concluded otherwise. Armas was part of an anti-terrorist police force in Peru before his 1989 retirement from police work. During that time, he received four anonymous threatening phone calls. He reported the calls to his police superiors, who acknowledged that all of the anti-terrorist police faced threats, and told him that they protected their unit but were there "to protect people's lives" and "couldn't guarantee or do anything for [him]." This does not suffice to establish past persecution. True, persecutors may include private parties the government is "unable or unwilling to control." *See*

*Emelkin v. Ashcroft*, 97 Fed. Appx. 27, 29 (6th Cir. 2004).  But that does not help Armas.  Here, the government actively fought the terrorists, and Armas was part of that fight.  Of course he faced threats from terrorists—but only as part of the job he had chosen, not as part of any government-sanctioned persecution.  We need not delineate here the circumstances under which we would consider a government "unable to control" a wrongdoer—but certainly no government is expected to offer its people, let alone its police officers, complete safety.  Thus the IJ reasonably concluded Armas had not suffered past persecution.

## B.  Future Persecution

Having failed to establish past persecution, the petitioners bore the burden of proving their alleged fear of future persecution.  8 C.F.R. § 1208.13.  A fear of future persecution in one's country of nationality requires (1) a fear that one will be persecuted "on account of race, religion, nationality, membership in a particular social group, or political opinion"; (2) a "reasonable possibility" of such persecution if one were to return; and (3) an unwillingness to return or avail oneself of the protection of that country because of that fear.  8 C.F.R. § 1208.13(b)(2).

The IJ properly concluded Dizdaric failed to show a well-founded fear of future persecution in Bosnia.  Dizdaric testified she would be persecuted if she returned to Bosnia because she is a Muslim married to a Catholic, and the "general public" would kill her for that.  She based her belief on something she saw "on the TV" about "people that were ordered to go back to Bosnia in a similar situation."  Rather than rely upon Dizdaric's television-based impressions, the IJ looked to a State

Department report indicating that Bosnia's constitution protects religious freedom, and that individuals enjoyed the right in "ethnically mixed" areas. The IJ thus reasonably concluded Dizdaric was not entitled to asylum or withholding of removal based on a fear of future persecution, because she could avoid future persecution by relocation to an ethnically mixed area of Bosnia. *See* 8 C.F.R. § 1208.13(b)(2)(ii) ("An applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality. . . .").

The IJ also properly concluded Armas lacked a well-founded fear of future persecution. The record contains no evidence of a reasonable possibility that Armas would be persecuted by terrorists in Peru. Given terrorism's substantial decline in Peru (e.g., only thirty-one terrorist killings were reported there in 2000), and the large number of other, more likely potential targets (e.g., current police officers), the likelihood of Armas being singled out seems minuscule, especially in light of his retirement from police work sixteen years ago and long absence from the country.

Because the IJ properly concluded the petitioners suffered no past persecution, and had no well-founded fear of future persecution, we need not address its alternative holding, also challenged here, that the petitioners were ineligible for asylum and withholding of removal because they had "firmly resettled" in Germany before coming to the United States.

We thus deny the petition for review.